IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:15-cv-13 (WOB-JGW)

UNITED STATES OF AMERICA, EX
REL. KATHERINE DILLION                                              PLAINTIFF

V.

ST. ELIZABETH MEDIAL CENTER, INC.                                   DEFENDANT

### MEMORANDUM OPINION AND ORDER

This is a *qui tam* action brought pursuant to the False Claims Act ("FCA"). 31 U.S.C. §§ 3729-3730. On behalf of the United States, Katharine Dillon ("Relator") alleges that her former employer, St. Elizabeth Medical Center, Inc. ("SEMC"), systematically and willfully submitted thousands of false claims to the United States government, seeking payment for double billed and medically unnecessary hospital laboratory procedures.

The matter now comes before the Court on SEMC's Motion to Dismiss. (Doc. 21). Having previously heard the parties, the Court now issues this Memorandum Opinion and Order.

**I. Facts**

Relator Katharine Dillon was a Laboratory Systems Director with SEMC from March 2011 through November 2013. (Doc. 33 at 7-8). During that time, she allegedly observed various issues relating to SEMC's billing practices, including systematic double billing for troponin[1] lab testing and fraudulent upcoding of procedures.[2] (*Id*. at 8). Dillon reported her findings on the double billing for lab testing in a memo to SEMC's upper management and compliance committee and

---

[1] Troponin is a cardiac enzyme. (Doc. 33 at 4).
[2] Medical 'upcoding' is the process of intentionally submitting an incorrect billing code for a more expensive procedure than the one actually performed.

1

was allegedly met with "resistance and obstruction." (*Id*. at 8). She claims SEMC never reported her findings of the double-billing to the government. (*Id*. at 10). Dillon later discovered the fraudulent upcoding procedures and, because she had previously been met with resistance from management regarding the double billing, she decided to initiate an internal audit—called a "Rapid Improvement Event"—to investigate the nature and scope of the alleged upcoding. (*Id.* at 12-13). In January 2012, data compiled from the Rapid Improvement Event allegedly confirmed Dillon's suspicions of fraudulent upcoding that had been submitted to Medicare and Medicaid, in violation of SEMC's provider agreements. (*Id*. at 13-14).

In November of 2013, Dillon left SEMC. (*Id*. at 8). Dillon signed a separation agreement which released SEMC from all future legal claims against it arising from Dillon's employment. (Doc. 23-1 at 4). Specifically, the agreement released SEMC "from any and all claims of whatever nature," including claims arising "under any federal law." (Separation Agreement, Doc. 23-1 at 4). It also included language stating Dillon "waives her right to receive any monetary relief from any action brought by her or on her behalf pursuant to the False Claims Act." (*Id*.)(emphasis added). At oral argument, Dillon's counsel confirmed that his client received a $29,000 severance payment upon execution of this agreement.

A little more than a year after leaving SEMC, on February 3, 2015, Dillon filed this action, seeking damages and a civil penalty on behalf of the Government for SEMC's alleged violations of the FCA, as well as damages for alleged retaliation in response to her internal investigation. (Doc. 1).

On November 2, 2016, SEMC moved to dismiss. (Doc. 21). On November 23, 2016, the United States filed a response to SEMC's Motion to Dismiss, stating that the government "has not intervened in this *qui tam* action, [yet] remains the real party in interest and retains a stake in

2

ensuring that this matter does not compromise the claims of the government." (Doc. 25 at 1). On December 30, 2016, SEMC filed a response to the government's statement of interest, attaching previously undisclosed refund letters that were allegedly sent to various entities administering the Medicare and Medicaid programs regarding the double billing issue. (Doc. 37). Relator filed an objection to the admissibility of the refund letters in consideration of SEMC's Motion to Dismiss. (Doc. 39).

**II. Analysis**

**A. The Court will not include Defendant's Refund Letters when considering this Motion.**

Before addressing the merits of SEMC's Motion to Dismiss, the Court must first establish the body of evidence it may consider. In response to the Government's statement of interest, SEMC attached refund letters it allegedly sent to various entities administering the Medicare and Medicaid programs. "In those letters, [SEMC] explained the nature of the overbilling, how it was detected, and included a reimbursement check for the amount of overbilling which occurred during the period investigated." (Def. Resp. to Government's Statement of Interest, Doc. 37-1). SEMC asserts that these letters are proof that SEMC "placed the Government on notice of the troponin overbilling which is now the subject of Relator's complaint." (*Id.* at 2). Dillon objects to these letters, arguing they constitute new evidence outside the pleadings and should not be used in deciding whether to grant SEMC's Motion to Dismiss.

As will be discussed, whether the government had knowledge of allegedly fraudulent actions before the filing of this *qui tam* action is crucial to deciding whether Dillon is barred from pursuing this FCA case. SEMC's response to the government's statement of interest is the first instance in which these letters are referenced. More importantly, SEMC made no mention in its Motion to Dismiss that the government was ever put on notice of Dillon's alleged findings.

The Court is constrained from admitting these letters for the purpose of ruling on SEMC's Motion to Dismiss because when

> matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d).

Here, SEMC failed to include these letters and the assertion that the government was put on notice of the alleged fraud in its Motion to Dismiss. This denied Dillon and the government a "reasonable opportunity to present additional material and to request discovery." *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1109 (6th Cir. 2010). Thus, the Court will not convert SEMC's Motion to Dismiss into a motion for summary judgment, and the letters will be excluded from the Court's present analysis.

The Court will therefore **SUSTAIN** Dillon's objection to the admission of SEMC's refund letters in considering this Motion to Dismiss.

**B. The record is not clear on whether the government had enough information to know the substance of Dillon's *qui tam* action at the time Dillon signed her release of an FCA claim, so a decision on whether this suit is barred is not appropriate at this juncture.**

On November 12, 2013, Relator signed a separation agreement with her erstwhile employer, Defendant SEMC, which included a release "from any and all claims of whatever nature," including claims arising "under any federal law." (Separation Agreement, Doc. 23-1 at 4). The release also includes the following language:

> Associate agrees that she cannot waive her right to file a charge with the Equal Employment opportunity Commission or Department of Labor but should a charge be filed, [s]he waives her right to receive any monetary relief from the charge(s). Associate further **waives her right to receive any monetary relief from any action brought by her or on her behalf pursuant to the False Claims Act.**

(*Id.*)(emphasis added). Beyond explicitly anticipating an FCA claim, this portion of the release only restricts Relator's right to receive monetary relief, and does not restrict her right to bring an FCA action or cooperate with the government on an investigation. (*Id.*; *see also id.* at 5 ("[I]n the event that any state of federal government authority or regulatory agency investigates SEMC or any of its physicians or employees, [Dillon] agrees to be forthcoming with any information she may have.")).

SEMC argues that this provision in the release prevents Dillon from bringing this *qui tam* action. Therefore, this Court must determine whether an explicit release of the right to receive monetary relief from a FCA claim at the time of separation is enforceable if the signatory later brings a *qui tam* FCA claim.

This Court is by no means the first to face this question. Though the Sixth Circuit has not had occasion to address the issue,[3] the Second, Fourth, Ninth, and Tenth Circuit have all thoroughly covered the question. *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 24–25 (2d Cir. 2016); *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 330–31 (4th Cir. 2010); *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1170–71 (10th Cir. 2009); *United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997); *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 963 (9th Cir. 1995). Together, those cases have developed a "government knowledge rule." *United States ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 361 (E.D. Mich. 2011). Because those opinions state a workable and clear rule, and absent guidance from the Sixth Circuit, this Court will adopt the government knowledge rule from these other circuits.

---

[3] At oral argument, the parties agreed that there is no decision on point from the Sixth Circuit. The only district court case within the Sixth Circuit to address the issue is *United States ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 360 (E.D. Mich. 2011). *McNulty* applied the widely accepted test from other circuits. *Id.* at 360-61.

The government knowledge rule originated in *Green*, a 1995 decision in which the Ninth Circuit "fashion[ed]" a rule because there was no statutory authority or prior federal common law on point. *Green*, 59 F.3d at 962. The *Green* Court held that a release "without the United States' knowledge or consent, and prior to the filing of an action based on that claim" was not enforceable because it would contravene the public interest furthered by the FCA of encouraging whistleblowers to come forward and report fraud. *Id*. at 956; *id.* at 966 (government only learned of fraud with filing of *qui tam* action).

A year later, the Ninth Circuit clarified the government knowledge rule in *Hall*. In *Hall*, the government was "aware of [the relator's] allegations regarding false certifications" prior to the execution of the release. *Hall*, 104 F.3d at 233. Therefore, the Court held that the release was enforceable because "the public interest in having information brought forward that the government could not otherwise obtain [was] not implicated." *Id*.

In subsequent years, the Second, Fourth, and Tenth Circuits have all cited to *Green* and *Hall* and adopted the government knowledge rule. *Ladas*, 824 F.3d at 23; *Radcliffe*, 600 F.3d at 329–30; *Ritchie*, 558 F.3d at 1169. There is thus wide agreement that when a relator has signed a release of her FCA claim, the proper inquiry is whether the government had full knowledge of the allegations forming the substance of the FCA claim at the time the relator signed the release.

This Court must therefore address whether the government had knowledge of the substance of the FCA claim at the time Dillon signed the release on November 12, 2013. The government directly asserts that it first learned of the upcoding and double billing allegations when it read about those claims in Dillon's complaint in this case. (Doc. 25 at 6). Assuming that is true, because the separation agreement predated the complaint, the government knowledge test would dictate that the release is not enforceable. *See Green*, 59 F.3d at 963.

Yet, SEMC raises two arguments in rebuttal. It argues that the government was aware of the double billing at least a year before Dillon signed the release, because entities administering Medicare and Medicaid received repayments that SEMC issued upon realizing it had double billed patients for troponin lab testing. Second, SEMC notes that all allegedly upcoded urine test results would have gone to Central Medicaid Services, and the government therefore had the raw data from which it could have inferred that SEMC was upcoding for medically unnecessary procedures.[4]

At this early stage of the case, it is difficult to know exactly what the government knew, when it knew it, how important that information was, and whether that information was sufficient to alert the government to alleged double billing and upcoding. It is not clear whether the letters to Medicare and Medicaid administrators were sufficient to alert someone within the government to the double billing practices that Dillon alleges in her complaint, as the Court does not know the reaction to those letters or other subsequent events. Similarly, without discovery on the subject, it is not clear whether the raw data regarding the urine tests would be sufficient to alert the government to the alleged upcoding.

Thus, this Court will not currently decide whether the government had sufficient knowledge of the alleged fraud at the time that Dillon and SEMC executed the separation agreement. Instead, the Court will **<u>DENY</u>** SEMC's Motion to Dismiss without prejudice, with the possibility of re-examining the issue after factual development.

**C. The separation agreement bars the retaliation claim.**

In addition to waiving an FCA claim, the release also waived Dillon's right to bring a retaliation claim. The release stated that she

---

[4] SEMC raised this argument for the first time at oral argument, and did not address it in writing.

> irrevocably and unconditionally hereby releases, acquits, and forever discharges and covenants not to sue SEMC . . . from any and all claims of whatever nature . . . which have been or could have been asserted by her or on her behalf in any forum as of the date of this Agreement. This release of claims includes . . . retaliation . . .

(Separation Agreement, Doc. 23-1 at 4).

This Court must thus decide whether a waiver of a retaliation claim is enforceable when a relator later attempts to contravene the clause and bring such a claim in an FCA case. Like the waiver of an FCA suit issue above, the Sixth Circuit has not had occasion to address this question. But other Courts of Appeals have considered the matter, and this Court will adopt their reasoning.

In 2015, the Tenth Circuit held that the FCA does not preclude an employee's waiver of her private retaliation claim against her employer. *VanLandingham v. Grand Junction Reg'l Airport Auth.*, 603 F. App'x 657, 661 (10th Cir. 2015). The Tenth Circuit distinguished the *qui tam* action for fraud as distinct from the private action for retaliation, and noted the FCA does not prescribe any policy hurdle for waiver of a retaliation claim. *Id*. The Fourth Circuit similarly indicated in dicta that the FCA permits waiver of an individual's right to retaliation claims. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 381 (4th Cir. 2008).

Applying that logic to the instant case, it follows that SEMC can enforce the clause in its separation agreement with Dillon stating that Dillon is barred from bringing a retaliation claim. Thus, this Court will **GRANT** SEMC's Motion to Dismiss with respect to Dillon's retaliation claim.

**D. Dillon's FCA claim is sufficiently pled.**

SEMC also argues Dillon failed to allege sufficient facts to support her FCA claim as required by Fed. R. Civ. P. 12(b)(6) and 9(b). (*Id*. at 7-9). Specifically, it argues Dillon fails to provide an explanation of what happened between the time she reported her investigative findings

and when she was left SEMC, and only speculates that SEMC took no corrective action. (*Id*. at 12).

**1. Motion to Dismiss standard applicable here.**

To survive a Motion to Dismiss under Rule 12(b)(6), a complaint must allege enough facts to "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible if the court can 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must be construed in the light most favorable to the plaintiff, accepting all well pleaded factual allegations as true." *Id*. (internal quotations and citation omitted).

Because the complaint alleges fraud, it must also comply with Rule 9(b):

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Rule 9(b) is beholden to the general pleading rules set out in Rule 8. 2 MOORE'S FEDERAL PRACTICE § 9.03[1][a] (3d ed. 2016). The Supreme Court has interpreted Rule 8 to require the statement of facts be sufficient to make a claim "plausible." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012). As the Sixth Circuit has stated:

> So long as a relator pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met. While additional detail may be relevant to the inquiry of whether a relator had pled the circumstances constituting fraud with particularity, it is not mandatory.

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)(internal citations and quotations omitted).

9

**2. Applying the standard.**

A presentment claim under § 3729(a)(1)(A) creates liability when an entity "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 761 (6th Cir. 2016). "This provision 'imposes liability when (1) a person presents, or causes to be presented, a claim for payment or approval; (2) the claim is false or fraudulent; and (3) the person's acts are undertaken 'knowingly,' i.e., with actual knowledge of the information, or with deliberate ignorance or reckless disregard for the truth or falsity of the claim.'" *Id.* (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 640 (6th Cir. 2003)).

Here, Dillon has sufficiently pled her claim for presentment by detailing her discovery of alleged double billing and upcoding that SEMC submitted to the government. Dillon further alleges she alerted SEMC management, but SEMC did not correct the issues. SEMC argues Dillon is merely speculating that nothing was done because she was not kept "in the loop," and therefore cannot allege that SEMC intentionally and knowingly violated the law. (Def. Mot. to Dismiss, Doc. 21-1 at 18). Aside from Rule 12's requirement to view the facts in the light most favorable to the non-movant, SEMC's argument ignores that Dillon remained in her position for more than 18 months after she disclosed her findings, during which time she allegedly continued to see the double billing and upcoding reoccur.

Thus, the Court will **<u>DENY</u>** SEMC's Motion to Dismiss the presentment claim under with Rules 12(b)(6) and 9(b).

**E. The statute of limitations does not bar the FCA claims.**

The statute of limitations on *qui tam* actions are six (6) years from the date in which the violation of § 3729 is committed, 31 U.S.C § 3731(b)(1), or three (3) years from the date when the government knew or reasonably should have known of the facts. 31 U.S.C. § 3731(b)(2).

Dillon's claims would be barred six years from the last overt act of the alleged conspiracy. *United States ex rel. Griffith v. Conn*, 117 F. Supp. 3d 961, 987 (E.D. Ky. 2015). Here, Dillon alleges that SEMC continued to fraudulently bill the government through 2013. (*See* Doc. 33 at 14). Though Dillon does not give a precise date of the last fraudulent transaction in 2013, even if the Court were to assume that the statute of limitations began to run on January 1, 2013, Dillon's claims would not be barred until January 1, 2019.

Thus, the Court will **DENY** SEMC's Motion to Dismiss with respect to the statute of limitations on Dillon's FCA claims.

**III. Conclusions**

Therefore, having reviewed the matter, and being otherwise advised, **IT IS ORDERED** that:

1. The Court will **SUSTAIN** Dillon's objection (Doc. 39) to the admission of SEMC's refund letters in considering the Motion to Dismiss;

2. The Court will **DENY WITHOUT PREJUDICE** SEMC's Motion to Dismiss (Doc. 21) with respect to enforcing the waiver of the FCA suit;

3. The Court will **GRANT** SEMC's Motion to Dismiss (Doc. 21) with respect to Dillon's retaliation claim (Fourth Cause of Action, Complaint, Doc. 1 at 36);

4. The Court will **DENY** SEMC's Motion to Dismiss (Doc. 21) with respect to the sufficiency of Dillon's pleadings under Rules 12(b)(6) and 9(b);

5. The Court will **DENY** SEMC's Motion to Dismiss (Doc. 21) with respect to the statute of limitations on both the government's and Dillon's FCA claims; and

6. This matter be, and is hereby, **SET FOR DOCKET CALL ON WEDNESDAY, AUGUST 9, 2017 AT 1:00 P.M.**

This 13th day of July, 2017.

Signed By:
William O. Bertelsman   WOB
United States District Judge